STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-14-16

THE BANK OF MAINE,

          Plaintiff,

v.

ASSOCIATED GROCERS OF MAINE,
INC., et al.,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**COMBINED ORDER ON THREE MOTIONS RELATING TO DEFAULT ENTERED AGAINST ASSOCIATED GROCERS OF MAINE, INC.**

## I.    INTRODUCTION

Before the Court is the Associated Grocers of Maine, Inc.'s ("AGME") Motion to Set Aside Default and for Leave to File Late Answer; the Supplemental Motion of Intervenor Philadelphia Indemnity Insurance Company ("PIIC") to Set Aside Default and for Leave to File Late Answer; and Bank of Maine's ("BOM") Motion to Strike the Motion and Amended Motion of Defendant Associated Grocers of Maine Inc. to Set Aside Default and for Leave to File Late Answer.

## II.    BACKGROUND

This case was filed in the Kennebec County Superior Court on August 30, 2013 and subsequently transferred to the Business and Consumer Court on April 4, 2014.[1] Before it was

---

[1] On May 7, 2014 an initial Case Management Conference (CMO) was held at which the parties requested and were allowed to go directly to a Judicially-Assisted Settlement Conference. Settlement did not occur and so the parties were ordered to file briefs on the default-related motions. On September 10, 2014 the Court held a second CMO telephonically and a Scheduling Order issued. On September 23, 2014 AGME filed a Motion for Appointment of a Dissolution Receiver which was withdrawn on October 16, 2014. On October 10, PIIC filed a Motion to Intervene as of Right for Purposes of Appointing Representative for AGME to conduct and manage the defense, or alternatively, for purposes of defending in the name of

1

transferred, on March 21, 2014, the Clerk in Kennebec County Superior Court entered a default against Defendant AGME. The Bank of Maine is represented by Attorneys Jay S. Geller and Paul McDonald, AGME is represented by Attorneys Mark Franco and Brendan O'Rourke, and 17 individual Defendants are represented by Attorney George Royle, V.

The Kennebec County Superior Court appointed a Receiver on June 15, 2011 in the matter of *Savings Bank of Maine v. Associated Grocers of Maine and Camden National Bank,* CV-11-92m ("Savings Bank"). After the appointment, Defendant AGME was dissolved administratively by the Maine Secretary of State, the entire Board of Directors and registered agent resigned, and it had no employees. On November 26, 2013, BOM filed a motion asking the Court in this case to authorize BOM to serve the Receiver, James C. Ebbert, who had been appointed in *Savings Bank,* which had also by then been transferred to the Business and Consumer Court. This Court granted that motion on December 18, 2013, and on January 22, 2014, service was made. Service was acknowledged by the Receiver on an Acknowledgement form. However, the back of the Summons in the Court file states that service was made upon Fred Bopp, Esq. of Perkins Thompson, and the Summons was actually signed by Attorney Daniel Murphy of Bernstein Shur, the law firm that represents the party (BOM) who soon after obtained a default against AGME.[2] Attorney Murphy's July 7, 2015 affidavit states that on January 27, 2014 he received an original signed version of the Acknowledgement executed by the Receiver who had waived personal service.

---

AGME. On January 24, 2015 the Court after briefing and reconsideration granted PIIC's Motion to Intervene and added PIIC as a named party to the case.

[2] On March 19, 2014, Attorney Murphy signed the Application for Entry of Default filed in the Kennebec County Superior Court.

On February 10, 2014, while this case was still pending in the Kennebec County Superior Court, Attorney Joshua Randlett of Richardson, Whitman, Large & Badger, on behalf of AGME, filed a consented-to motion to enlarge the time to file responsive pleadings to March 6, 2014. That motion was granted on February 13, 2014. On March 6, 2014 – the deadline for AGME to file responsive pleadings – Attorneys Randlett and Fred Badger filed a motion to withdraw, which was granted. The motion states that as of that date AGME's (unnamed) insurer had taken the position that it owed no duty to defend or indemnify AGME, and that their firm was no longer authorized to file any responsive pleadings. The motion states, "On information and belief Defendant AGME has been dissolved and does not have any active directors, officers or employees. Consequently there is no one from Defendant AGME that can consent to and/or authorize the undersigned to represent Defendant AGME in this case or to otherwise act on its behalf. Lacking any such authorization, the undersigned (attorneys) cannot represent Defendant AGME in this case." (Mot. to Withdraw ¶ 4.) The motion also advised the Court that in accordance with Rule 89(a) of the Maine Civil Rules, notice of the motion to withdraw would be given to AGME at a post office box in Gardiner, Maine.[3]

Over PIIC's objection, the Court set the pending motions regarding the default for a testimonial hearing which occurred on May 6-7, 2015 and May 11, 2015, at which Attorney Bopp and a claims specialist for PIIC, Rebecca Kennedy, testified. The parties argued orally at

---

[3] BOM does not argue in these proceedings that PIIC had actual notice that this extension to file responsive pleadings had been granted to AGME at the request of Attorneys Badger and Randlett, or that PIIC knew that theses attorneys for AGME would not be filing pleadings which would have protected AGME's interests. An affidavit filed by Attorney Randlett on July 6, 2015, indicated that he and Attorney Badger had been hired by Liberty Mutual/Peerless Insurance to represent AGME but that the company ultimately decided that it owed no duty to AGME to indemnify or defend in this case. In addition, the affidavit indicates that neither he nor Attorney Badger knew anything about PIIC's role in this case until after the default was entered, and that at no time did either of them have contact with PIIC about this matter. BOM does, however, ask the Court to contrast the actions of Liberty Mutual/Peerless Insurance with the actions of PIIC and the claim is made that "in the span of one month, Liberty exhibited more diligence than PIIC exhibited over two years." (Supp. Br. of BOM 4.)

3

the conclusion of the evidence, and the Court took the matter under advisement. However, after beginning its review of the evidence, the Court convened a conference with counsel on June 19, 2015, to advise that after oral argument on the pending motions the Supreme Judicial Court had issued its opinion in *Town of Wiscasset v. Mason Station,* 2015 ME 59, ___ A.3d ___ in which it reiterated the standard for vacating a default and default judgment. In addition the Court had questions for counsel after reviewing the court filings including the Summons and Acknowledgement of Service, and the role played by Attorneys Fred Badger and Joshua Randlett who entered their appearance in this matter for AGME shortly after the Receiver was served. By agreement, the parties were given until July 7, 2015, to supplement the record and arguments made.

The Court has reviewed the testimony and the exhibits admitted in evidence, has considered the parties' arguments, and issues the following findings and Order granting both motions to set aside the default, and denying BOM'S motion to strike AGME's motion.

## III. FINDINGS

A threshold issue in this matter, the parties agree, is the credibility of the two witnesses who testified at the hearing on the pending motions, Rebecca Kennedy and Attorney Fred Bopp. As the Court intimated at the conference, the Court finds that both witnesses were quite credible in their testimony. While each witness strenuously disagrees with the other's rendition of events and communications, it is apparent to the Court that Attorney Bopp indeed informed Ms. Kennedy on more than one occasion that he represented Mr. Ebbert as the Receiver of AGME. At the same time, it is apparent that Ms. Kennedy believed throughout her dealings with him that he represented AGME, as well as the Receiver for AGME.

4

Attorney Bopp is a highly respected attorney who has considerable expertise in the law of receivership. He is appropriately comfortable with his knowledge and understanding of this relatively complex area of law. Ms. Kennedy clearly and admittedly is not. The Court finds that Mr. Bopp subjectively believed he was being candid with Ms. Kennedy about his role in this litigation, while Ms. Kennedy subjectively believed he was representing PIIC's insured, AGME. The Court further finds that it was not unreasonable for Ms. Kennedy to believe this, even though her belief was wrongly held.

The most telling pieces of evidence supporting these findings are Exhibits 7, 9, 11, 28 and 29. On March 2, 2012, Attorney Bopp sent PIIC a letter by certified and first class mail that starts out by saying that: "This firm represents James C. Ebbert, of Aurora Management Partners, Inc., in his capacity as Court-Appointed Receiver for Associated Grocers of Maine, Inc. ("AGME")." The letter goes on to say that "AGME demands that Philadelphia Indemnity Insurance Company defend and indemnify AGME against the allegations of the Bank of Maine." (BOM Exh. 7). On June 11, 2012 Ms. Kennedy on behalf of PIIC sent a lengthy email to Mr. Ebbert through Attorney Bopp stating that PIIC recognized the demand as a potential claim and that PIIC was reserving its rights and policy defenses. It goes on to tell the Receiver that when and if a claim is triggered, "if you need assistance in identifying appropriate counsel or in assigning counsel please so advise immediately." (BOM Ex. 9 2.) It advises that an insured has the "right and duty to defend the claim, including the selection of counsel; however, PIIC must consent to its selection of counsel." (BOM Ex. 9 3.) It further requests that PIIC receive copies of pleadings and correspondence, that it be kept advised of important developments, and that "defense counsel provide us with an initial analysis or litigation plan to include the following...." The list includes a request for evaluation from defense counsel as to the strengths and

5

weaknesses of claims and defenses, the "proposed defense strategy up to and through trial w/related budget" and "proposed budget." The Exhibit is obviously designed to be a communication between an insurance company and its likely insured, and it includes topics which would certainly not be intended for discussion with anyone who might lack an incentive to protect AGME's interests in the litigation pending before the Court.[4]

On June 19, 2012, Attorney Bopp responded to this email by advising Ms. Kennedy "formally that James C. Ebbert, in his capacity as Court-Appointed Receiver (the "Receiver") for Associated Grocers of Maine, Inc. ("AGME") has selected the law firm of Perkins Thompson, P.A. ("PT") as his counsel with respect *to this matter* and to request that PIIC consent to the Receiver's selection of PT as counsel." (BOM Ex. 11) (emphasis added).

These exchanges between Ms. Kennedy and Attorney Bopp help explain how she could have believed that she was dealing with an insured with a potential claim, and that she and Attorney Bopp were engaged in the process of obtaining counsel for that insured. In other words, given her lack of understanding of the law of Receivership, it was not unreasonable based on these exchanges for her to believe that the Receiver was essentially AGME, and that Attorney Bopp was advising her that AGME had selected his law firm to represent AGME. The question of why the Receiver expected that his legal fees might be paid by PIIC if the Receiver's counsel did not represent PIIC's insured was not clearly addressed by BOM in their arguments. The

---

[4] In BOM's Motion for Service by Alternate Means, BOM's counsel states in paragraph nine: "Although the Receiver does not stand in the shoes of AGME's Board of Directors and likely will have no incentive to defend the lawsuit (AGME has no assets that are not encumbered by the liens of the Bank), serving the Receiver is the only alternative method available to serve AGME. In the affidavit in support of the motion, Attorney Geller states in paragraph seven that: "Given the circumstances, service on the Receiver is reasonably calculated to provide actual notice of the pendency of the action to AGME and is the most practical manner of effecting notice of the suit." At hearing, Attorney Bopp informed the Court that the Receiver did not object or even respond to the motion for alternate service and explained, "[w]ell, this is a bit of a delicate areas because I don't want to get into discussions that we had with our client as to --- that would be protected by attorney-client privilege." (Mot. Tr. 230.)

6

issue before the Court, however, is the message conveyed by the Receiver to PIIC when his attorney engaged in the "consent process" as evidenced by Exhibits 9 and 11.[5]

On January 10, 2014, Attorney Bopp sent PIIC a certified and first class mail letter, which begins again with the statement that: "This firm represents James C. Ebbert of Aurora Management Partners, Inc., in his capacity as Court-Appointed Receiver for Associated Grocers of Maine, Inc. ("AGME")." It informs PIIC that BOM filed a Complaint in the Kennebec County Superior Court on August 30, 2013 against AGME and its individual directors. It also informed PIIC that BOM had obtained authority from the Court to serve AGME by serving Mr. Ebbert. The letter enclosed copies of the motion for alternate service and the Court's order on the motion.

It goes on to state: "AGME is afforded coverage for the enclosed Complaint and the Receiver demands that Philadelphia Indemnity Insurance Company defend and indemnify AGME against the allegations of the enclosed Complaint." It also tells PIIC that the Receiver expected to be served by January 27, 2014, and requests that PIIC "notify us before that time whether it will so defend and indemnify AGME." (BOM Ex. 28.)

It is obvious to the Court that PIIC, through Ms. Kennedy, interpreted this letter as a demand from an insured to their insurer that the insured be afforded coverage, that the insurer defend and indemnify the insured in the lawsuit at bar, and that PIIC inform the Receiver if PIIC would agree to do what the Receiver was demanding. Her response in an email of January 22, 2014 was that PIIC's defense obligations had been triggered, subject to a reservation of rights.

---

[5] Mr. Bopp testified that the Receiver was not sure what role he might play in this litigation and if he had a role, "whether there might be insurance coverage available." (Tr. of Evidentiary Hearing 234-235.) Mr. Bopp stated also that in other litigation involving AGME the Receiver had been paid by PIIC. It is not at all clear, however, from the correspondence between Mr. Bopp and Ms. Kennedy that the issue of what role the Receiver might play in this litigation and why PIIC should pay legal fees for the Receiver – in addition to paying legal fees for the insured – was ever discussed.

7

She also writes, "the policy is written with the insured having the right and duty to defend; although the insured can turn over the defense to PIIC if the insured chooses. Are you tendering the defense? If there is a conflict that that precludes AGME from being defended by the same counsel as the individual defendants, PIIC has the right to assign separate counsel." (BOM Ex. 29.)

The Court believes there is no other way to read this response from Ms. Kennedy as anything other than an expression of her belief, right or wrong, that Attorney Bopp represented PIIC's insured. Her only concern is to anticipate the possibility that AGME might not be able to be represented by the same attorney as the individual defendants, but there is no uncertainty on her part as to what she believes Mr. Bopp's role to be.

Attorney Bopp's response to these questions establish convincingly that this was the first moment he clearly understood that Ms. Kennedy did not understand who he represented and who he did not. He sent her an email at 9:00 p.m. on January 22, 2014, which reads in relevant part: "Given that the Receiver is not the same entity as AGME and AGME is the insured under the policy, and in light of certain other facts, I think this situation presents us with some unusual circumstances." (BOM Ex. 31.)

Approximately three hours earlier that same day, Attorney Bopp sent to Attorney Murphy a scanned PDF copy of the signed Acknowledgement of Receipt of Copy of Summons and Complaint. (Daniel J. Murphy Aff. ¶ 8; Ex. B.) Unfortunately, Attorney Bopp and Ms. Kennedy do not further confer about the Receiver having been served, or about the "unusual circumstances" to which Attorney Bopp referred. Ms. Kennedy apparently called Attorney Bopp the morning of January 23, 2014, and he replies by email apologizing for missing her call and telling her he was then available to speak.

8

The parties agree that at no time did Attorney Bopp or the Receiver ever tell Ms. Kennedy or any other agent of PIIC that Mr. Ebbert had been served. BOM argues that it was not Mr. Ebbert's duty to notify PIIC that he had been served, despite its representation to the Court in an affidavit in support of its Motion for Alternate Service that serving the Receiver, as opposed to any other method of service, was "reasonably calculated to provide actual notice of the action to AGME and is the most practical manner in effecting notice of the suit." Rather, BOM suggests that it was Ms. Kennedy's obligation to check with Attorney Bopp to find out when the Receiver would be served, and that it was unreasonable, even reckless, for her to rely upon Attorney Bopp to inform her when service had occurred. BOM urges the Court to view Ms. Kennedy's testimony and statements in her emails to Attorney Bopp as "self-serving." In order to do that, the Court would essentially have to find that Ms. Kennedy was making these statements knowing at the moment she made them that a default would be entered, and that she needed to line up a story to excuse her lack of diligence. The Court can think of no reason – and when pressed, BOM's counsel could not either – why Ms. Kennedy would ask if Attorney Bopp was "tendering the defense" unless she honestly believed she was speaking to counsel for the insured.

On March 19, 2014, counsel for BOM applied for entry of default from the Kennebec County Superior Court which did enter default on the application on March 21, 2014. On March 27, 2014, Ms. Kennedy sent Attorney Bopp an email in which she states, "I thought you were defense counsel for AGME. I understand that the BOM entered default against AGME. Please advise how this happened?" (BOM Ex. 33.)[6]

---

[6] This email, along with other emails sent by others involved on both sides in this case, was sent to the wrong email address. Ms. Kennedy describes Attorney Bopp's firm in the address as Perkins Thompkins and not Perkings Thompson. Even though it was not received, no one has suggested that it was not written by Ms. Kennedy or that she attempted to send it to Attorney Bopp.

9

On May 6, 2014, Attorney Bopp received a letter from attorneys from Morrison Mahoney, PIIC's coverage counsel, informing him that PIIC "previously understood that you represented AGME, but PIIC now understands that you are representing the Receiver and that you no longer represent AGME." (BOM Ex. 35.) PIIC also advised Attorney Bopp that PIIC would be represented in this litigation by Attorney Mark Franco.

## IV. CONCLUSIONS

The Law Court has recently reiterated that pursuant to Rule 55(c) a movant must show good cause for setting aside an entry of default and that "good cause requires a good excuse for untimeliness and a meritorious defense." *Town of Wiscasset v. Mason Station, LLC,* 2015 ME 59, ¶ 7, __ A.3d__ (citing *Richter v. Ercolini,* 2010 ME 38, ¶ 15, 994 A.2d 404). In previous filings the parties had used language from other jurisdictions, including federal courts, for what might or might not constitute "good cause."

Because *Mason Station* was decided several days after the evidentiary hearing, the Court gave the parties the opportunity to supplement their briefing on this issue, and to specifically give BOM an opportunity to locate any cases where an entry of default was allowed to stand under circumstances similar to those presented in this matter. As counsel for the defendants pointed out at the conclusion of the evidentiary hearing, the cases cited by BOM are all cases where a party, or the party's counsel, or the party's insurance representative/agent, is served or knows that service has occurred.[7] In those cases, it is then a relatively straightforward matter for a Court to determine if a party or a party's counsel or representative who knows they have been served has acted diligently. In this case, all agree that neither PIIC or its representative, Ms.

---

[7] The Court has reviewed the cases cited by BOM in its recent supplemental findings, including *Berry v. Mallett,* 2011 Me. Super. LEXIS 171. This case is like all the others cited by BOM in that the party being sued knew it had been served. However, the Canadian entity being sued had been served but mistakenly believed that the lack of a docket number on the summonses and complaints meant – as it apparently does in Canada – that no answer was required.

Kennedy, ever knew that service had been accomplished on the Receiver, and so the typical analysis cannot be conducted. While Ms. Kennedy and therefore PIIC was on notice that alternate service had been approved, and that it was coming, they were never told when it did occur. The only individuals who knew service had occurred were adverse parties, and the Receiver who has adamantly and appropriately maintained that he is not the representative of the Defendant. In addition, the Court has found that PIIC through Ms. Kennedy reasonably but mistakenly believed that Attorney Bopp was their insured's (AGME's) attorney. Under these circumstances the Court cannot find that PIIC's reliance upon the Receiver to inform PIIC when he had been served to constitute a lack of diligence.

As counsel for the individual defendants further noted at oral argument, Attorney Bopp was placed by BOM – and the Court – in a difficult if not untenable position. His client had a court-imposed duty to accept service, but likely not a duty to convey to PIIC that his client, the Receiver, had been served -- despite BOM's representation to the Court that serving the Receiver was reasonably calculated to achieve actual notice of the pendency of the action to AGME. This, together with BOM's characterization of the Receiver as having no incentive to defend the action, should have caused the Court to recognize the difficulties, which ensued for all involved. However, it never occurred to the Court that Mr. Ebbert would not notify AGME's representative that he had been served as he did not object – or even respond – to the motion made by BOM that service upon the Receiver was an appropriate alternate service.

The Court would emphasize that it is not finding or suggesting that Mr. Ebbert, or any attorney for any party involved in this matter has committed any ethical breach. However, the Court is finding and concluding that AGME and PIIC had a good excuse for not timely filing a responsive pleading under all of the "unusual circumstances" of this case.

11

With respect to the requirement to establish a meritorious defense, the Defendants do not need to establish that they would necessarily prevail on the merits but need only set forth facts which if proven at trial would constitute a viable defense. *Hamby v. Thomas Realty Associates*, 617 A. 2d 562, 564 (Me. 1992). The party claiming a meritorious defense does not need to set forth admissible evidence at this stage but may set forth the evidence in affidavit form or in the defaulting party's pleadings. The Court is satisfied that meritorious defenses have been set forth by the Defendant and Intervenor in their pleadings which also contain affirmative defenses, and as further articulated in their briefs.

**The entry will be:**

Defendant Associated Grocers of Maine's Amended Motion to Set Aside Default and for Leave to File Late Answer is GRANTED. The Supplemental Motion of Intervenor Philadelphia Indemnity and Insurance Company's Motion to Set Aside Default and File Late Answer is GRANTED. Bank of Maine's Motion to Strike AGME's Amended Motion is DENIED.

Pursuant to M.R. Civ. P. 79(a), the Clerk is herby directed to incorporate the Order by reference in the docket.

| | |
|---|---|
| __7/10/15__ | _____/s_____ |
| **DATE** | **SUPERIOR COURT JUSTICE** |
| | **BUSINESS AND CONSUMER COURT** |

12

**The Bank of Maine v. Associated Grocers of Maine, et al.**

**BCD-CV-14-16**

**The Bank of Maine**

### Plaintiffs

Counsel:                              *Paul McDonald, Esq.*
                                      *Jay Geller, Esq.*
                                      100 Middle St
                                      PO Box 9729
                                      Portland, ME 04104-5029


**Tim Mellen, Oliver Andrews, John Robichaud,
George Humphrey, David Allenson, David Sleeper,
Craig Burgess, Thomas Ruggerio, Phil Chabot, Ronald Cloutier
Thomas Barber, John Beaupre, Charles O'Brien, Cathy Callahan,
Frederick Crowe, Paul Trusiani and Barry McCormick**

### Defendants

Counsel:                              *George Royle, Esq.*
                                      84 Marginal Way, Suite 600
                                      Portland, ME 04101-2480


**Philadelphia Indemnity Ins. Co.**

### Intervenor

Counsel:                              *Mark Franco, Esq.*
                                      Three Canal Plaza
                                      PO Box 4630
                                      Portland, ME 04112-4630